UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CECIL H. DUDLEY,

        Plaintiff,

v.

CSX TRANSPORTATION, INC.,

        Defendant.
_____/

Case No.  1:04-CV-649

HON. RICHARD ALAN ENSLEN

**OPINION**

This matter is before the Court on Defendant CSX Transportation, Inc.'s Motion for Partial Summary Judgment and Supplemental Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[1]  Defendant's motions request summary judgment as to Plaintiff's claims brought pursuant to 45 U.S.C. §§ 51-60, *et seq*., the Federal Employers's Liability Act ("FELA").

**I.**      **Procedural Background.**

Plaintiff worked for Defendant or one of its predecessors for thirty years until he resigned in 2002. (Def.'s Mot. at 4.)  For most of his career, Plaintiff worked as a freight conductor which primarily included working "road jobs," such as bringing freight trains from one location to another. (Pl.'s Resp. at 6.)  These jobs included opening and closing switches, couplers, and air hoses and walking along the track when Plaintiff's crew was building a train or performing switching operations.  (Def.'s Mot. at 4.)  Plaintiff sustained a tear to his right rotator cuff which

---

[1] Defendant's first motion requested summary judgment as to Counts II, III and IV of Plaintiff's Complaint with prejudice.  On May 17, 2005, the Court granted leave for Defendant to file a supplemental motion to its first motion for summary judgment.  On May 17, 2005, Defendant filed a supplement to its original motion which requested summary judgment as to Count I of Plaintiff's Complaint.

1

was repaired by Dr. Frye in 1992. (Pl.'s Resp., Ex. 2 at 68, 75.) After this surgery Plaintiff was paid compensation for the injury and he signed a form purportedly releasing Defendant from liability as to the 1992 injury. (*Id*. at 66-69.) In 1993, Plaintiff suffered a back injury and had back pain which occurred intermittently in 1994, 1996, 1997, and 1998. (Def.'s Mot., Ex. A at 90-92; Ex. C at 11-12.) In 1996, Plaintiff complained to his doctor that he had numbness in three fingers on his left hand. (Def.'s Supp., Ex. A.) Plaintiff stopped working as a freight conductor in 1999 and started working in the yard, which included "yard jobs" such as building and taking apart freight trains. (Pl.'s Resp. at 6.) Among these activities were the duties of operating hand switches, walking on ballast, climbing on and off train cars and engines, operating hand brakes, coupling and uncoupling air hoses, aligning draw bars, and pulling pins that connect the railroad cars. (Pl.'s Resp., Ex. 2 at 9,10,105,109-11.)

On February 15, 2002, Plaintiff filed suit against Defendant in the Circuit Court of Cook County, Illinois, but the case was dismissed due to *forum non conveniens*, and re-filed in the United States District Court for the Eastern District of Michigan. The District Court for the Eastern District of Michigan granted a motion to transfer venue to the Western District of Michigan on September 24, 2004. (Def.'s Mot. at 3.)

Plaintiff seeks to recover under FELA on four separate Counts. Count I alleges Defendant negligently caused an occupational injury to Plaintiff's upper extremities, specifically, carpal tunnel syndrome in both his right and left wrists and arms. Count II alleges Defendant negligently caused occupational injuries to Plaintiff's back. Count III alleges Defendant negligently caused occupational injuries to Plaintiff's hearing. Count IV alleges Defendant negligently caused severe and disabling injuries to Plaintiff's upper extremities, specifically his right and left shoulders. (*Id*.)

Defendant now moves for summary judgment as to Count I regarding only Plaintiff's left upper extremity, and Counts II, III and IV regarding only Plaintiff's right shoulder. (Def.'s Supp. at 5; Def.'s Mot. at 9,14.)

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact. The party moving for summary judgment bears the initial burden of specifying the basis on which summary judgment should be granted and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). Once this initial burden is met, the non-moving party has the burden of presenting specific facts, supported by the record, showing a genuine issue of material fact. *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

FELA offers a federal cause of action against a railroad company to an employee injured or killed because of the railroad company's negligence. *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 588 (6th Cir. 2001). Although the remedy provided by FELA parallels common law negligence, the statute has been "'liberally construed . . . to further Congress' remedial goal' of holding railroads responsible for the physical dangers to which their employees are exposed." *Id*. at 588. However, Congress has also placed limitations on the possible recovery under FELA,

and one of these limitations is a three-year statute of limitations. *Id.* This statute of limitations generally runs from the day the cause of action accrues, namely when there has either been a violation of legally protected interests or a tortious event has been committed. *Id.* This is known as the time-of-event rule, that is, that the three year statute of limitations runs from the time the event occurs. *Id*.

An exception to this rule exists if an injury and cause are so latent as to elude discovery at the time when the event occurs. *Id.* In other words, "If greater than *de minimus* harm is discernable at the time of the tortious event," then a cause of action is considered to have accrued at the time of the event. *Id*. On the other hand, if an injury remains undiscovered long after the plaintiff is exposed to the cause of injury, the statute of limitations does not accrue until the injury manifests itself. *Urie v. Thompson*, 337 U.S. 163, 170 (1949). This is because Congress did not intend the statute of limitations to attach to claims involving an unknown and unknowable cause, or to assign fault to the blameless ignorance of a plaintiff. *Id*. at 169-70.

The FELA statute of limitations is an affirmative defense, and therefore, the defendant bears the initial burden of showing that the statute of limitations has run when moving for summary judgment. *Campbell v. Grand Trunk W. R.R. Co*., 238 F.3d 772, 775 (6th Cir. 2001). If the defendant meets this requirement and demonstrates the statute of limitations has expired, the burden shifts to the plaintiff to establish an exception to the statute of limitations. *Id.* If the plaintiff shows there is a disputed issue as to whether the current injury is a separate injury or a continuation of the time-barred injury, then the plaintiff has met the burden and the motion for summary judgment fails. *Aparicio v. Norfolk & W. Ry. Co*., 84 F.3d 803, 815 (6th Cir. 1996).

### III. Analysis

#### A. Count I: Carpal Tunnel in Plaintiff's Left Upper Extremity

The partial motion for summary judgment of Count I concerns whether (1) Plaintiff's claim regarding his left upper extremity is barred by the three-year statute of limitations and, if so, whether (2) Plaintiff has shown that there is a genuine issue of fact which indicates a reasonable jury could find that the current injury to his left upper extremity is distinct and separate from the former injury to his left upper extremity.

On October 9, 1996, Plaintiff complained to Dr. David Frye about occasional experiences of numbness in the radial three digits of his left hand. (Def.'s Supp., Ex. A.) Dr. Frye, who had performed shoulder surgery on Plaintiff in 1992, recommended that an "EMG and a nerve conduction study" be performed on Plaintiff's left upper extremity, (*Id.*), which was done by Dr. Val D. Syring on October 15, 1996. (Def.'s Supp., Ex. B). Dr. Syring found "evidence of a distal median neuropathy" . . . which "would support the presence of median nerve entrapment at the wrist such as would occur in carpal tunnel syndrome." (*Id*.) Upon receiving this report, Dr. Frye recommended Plaintiff undergo surgical decompression of the median and the ulnar nerves. (Def.'s Supp., Ex. C.) However, Plaintiff did not proceed with surgical intervention, and follow-up was left to his discretion. (*Id*.)

Upon review of the above evidence, Defendant has met its burden to show that Plaintiff sustained an injury in 1996, recovery for which would be barred by the statute of limitations. Therefore, the Court now examines whether Plaintiff has submitted evidence from which a reasonable jury could find Plaintiff's carpal tunnel injury in 2001 was distinct and separate from Plaintiff's injury in 1996.

Plaintiff testified in his deposition that after he was examined by Dr. Frye in 1996, he did not feel any further pain in his left upper extremity until 2001.[2] (Pl.'s Resp., Ex. 2 at 148-49.)

Additionally, Plaintiff has submitted evidence which supports his testimony. Dr. Robert O. Andres has practiced ergonomics and biomechanics as a scientist and taught ergonomics at the University of Michigan and the University of Massachusetts. (Pl.'s Resp., Ex. 10 at 1.) Dr. Andres stated that the additional duties Plaintiff was required to perform after transferring to a "yard job" increased the ergonomic risk factor to Plaintiff.[3] (*Id*. at 26.) Dr. Andres reviewed the tasks Plaintiff performed for Defendant and the available materials and concluded that Plaintiff was exposed to an increased ergonomic risk to his upper extremities. Dr. Andres associated this exposure with carpal tunnel syndrome. (*Id*.)

The Court finds that the evidence raises a genuine issue of material fact as to whether Plaintiff's carpal tunnel in his left upper extremity was an aggravation of the old injury or the occurrence of a new injury. Therefore, the Court will deny Defendant's Motion for Summary Judgment as to Count I.

### B. Count II: Occupational Injuries to Plaintiff's Back

The motion for summary judgment of Count II concerns whether (1) Plaintiff's claim regarding his back injury is barred by the three-year statute of limitations and, if so, whether (2) Plaintiff has shown that there is a genuine issue of fact which indicates a reasonable jury could find that the current injury to his back is distinct and separate from the former injury to his back.

---

[2] Plaintiff testified that he did not feel pain in his left hand until three years after the surgery on his right hand, which would be 2004. (Pl.'s Resp., Ex. 2 at 198.) However, he also testified that he noticed pain in his left hand at the same time he had surgery on his right hand in 2001. (*Id*. at 149.) The Court recognizes the discrepancy and, for the purposes of addressing this motion, will refer to the date of the injury as 2001 to avoid confusion. Plaintiff's current claim is not barred by the statute of limitations under either date, because Plaintiff filed his claim in 2002.

[3] The ergonomic risk factor is the disparity between the job demands and human physical capabilities, and it indicates the employee's potential of being injured. (Pl.'s Resp., Ex. 10 at 7.)

Plaintiff testified in his deposition that he had back pain in 1993, and that this pain intermittently returned in 1994, 1996, 1997, and 1998. (Def.'s Mot., Ex. A at 90-92; Ex. C at 11-12.) Plaintiff also testified he knew that this back pain was caused by walking on the ballast and working for the railroad. (Def.'s Mot., Ex. A at 89.) Upon review of the evidence, the Court finds that Defendant has met it's burden to show that Plaintiff is barred by the statute of limitations from filing a cause of action for recovery of his pain from the 1993 injury. Therefore, the Court must determine whether Plaintiff has submitted evidence by which a reasonable jury could find Plaintiff's pain and injury in 2000 was distinct and separate from Plaintiff's injury in 1993 and the intermittent pain from 1993 through 1999.

Plaintiff testified, in his deposition, the back pain he felt intermittently between 1993 and until 1999 was different from the back pain he felt in 2000. (Pl.'s Resp., Ex. 2 at 166-69.) He also testified that the intermittent back pain would go away if he treated it with topical creams for muscle relaxation. (*Id*.) Plaintiff testified that, in comparison to the earlier pain, the back pain in 2000 was persistent and severe, and that in the spring of 2000 he noticed that one of his legs was dragging. (Def.'s Mot., Ex. A at 162; Pl.'s Resp., Ex. 2 at 167.)

Furthermore, the testimony of Dr. Craig Bethune supports Plaintiff's testimony. Dr. Bethune was Plaintiff's physician from 1993 until 2001 and he saw Plaintiff on a regular basis. (Pl.'s Resp., Ex. 7 at 15-17.) Dr. Bethune testified, in his deposition, that Plaintiff's back pain in 1993 was from a recurring lumbar strain probably related to osteoarthritis, which is a degenerative disease. (*Id*. at 17.) Dr. Bethune believed the intermittent pain felt by Plaintiff from 1993 to 1999 was not from a spinal disc, because the pain was local and did not exhibit any radiculopathy or pain "shooting down into the buttocks or in the leg." (*Id*.) Additionally, Dr. Bethune noted Plaintiff's back pain would "crop up occasionally" through 1999. (*Id.* at 16.)

7

Dr. Bethune testified the pain Plaintiff suffered in 2000 was significantly worse, more persistent, and originated from herniated discs in Plaintiff's spinal cord as indicated by an MRI, in contrast to the prior intermittent pain.  (*Id.* at 18.)  Dr. Bethune then referred Plaintiff to a "pain specialist" in November 2000 because, in Dr. Bethune's opinion, Plaintiff's pain had changed. (*Id*. at 51-52.)  Dr. Bethune stated that Plaintiff's back pain in 2000 and 2001 was caused by a combination of degenerative disease of the lumbar discs and the more recent herniation of the lumbar discs.  (*Id.* at 52.)

Dr. Desiderio F. Ines' testimony supports the testimony of Dr. Bethune.  Dr. Bethune referred Plaintiff to Dr. Ines for a neurological examination, which included a electro diagnostic testing of Plaintiff's lower back.  (Pl.'s Resp., Ex. 8.)  In November 2000, Dr. Ines informed Dr. Bethune that Plaintiff had started feeling radicular symptoms nine months prior, and the symptoms were increasingly worse.  (*Id*.)  Dr. Ines also stated that the evidence from the neurological exam was consistent with the right L5 and S1 radiculopathy.  (*Id*.)

Additionally, Dr. John J. Dwyer's testimony corroborates that of Dr. Bethune.  Dr. Dwyer is an orthopedic surgeon who has practiced in Chicago and taught at Northwestern University. (Pl.'s Resp., Ex. 9, ¶ 2.)  In a sworn affidavit, Dr. John J. Dwyer, upon reviewing the record, noted Plaintiff was diagnosed with disc herniations at levels L3-4, L4-5, and L5-S1 for the first time in 2001.  (*Id*., ¶ 6.)  In Dr. Dwyer's opinion, Plaintiff's handling of rail equipment in the late 1990's caused the disc herniations in Plaintiff's back.  (*Id*., ¶ 8.)  Dr. Dwyer also testified that because Plaintiff had never experienced radiating pain into his legs prior to 2000, Plaintiff's performance of the "yard jobs" caused a separate injury to Plaintiff's back which became "superimposed upon his pre-existing degenerative lumbar disease."  (*Id*., ¶ 9.)

8

Dr. Dwyer testified that Plaintiff's injury "medically accounts for Plaintiff's onset of new persistent pain." (*Id.*)

Defendant argues that the Court may not consider Dr. Dwyer's affidavit in its assessment of the record because Dr. Dwyer's affidavit is inconsistent with Plaintiff's depositions. (Def.'s Reply at 7.) If a party has been examined at length by deposition, that party cannot submit an affidavit to contradict the prior testimony of that party merely in order to create a genuine issue of fact. *Farrell v. Auto. Club of Mich.*, 870 F.2d 1129, 1132 (6th Cir. 1989). However, *Farrell* does not require exclusion of Dr. Dwyer's affidavit because his affidavit is not contrary to Plaintiff's deposition. Plaintiff testified he had a back injury in 1993 and back pain intermittently between 1993 and 1999. (Def.'s Mot., Ex. A at 90-92; Ex. C at 11-12.) Plaintiff further testified that the 1993 to 1999 injury was distinctly different from the 2000 injury and pain. (Pl.'s Resp., Ex. 2 at 166-69.) This testimony is consistent with Dr. Dwyer's testimony that Plaintiff did not feel radiculopathy until 2000, which was around the time that the lumbar discs became herniated, and indicates a distinct injury.

Furthermore, Defendant argues that the facts in *Fonseca* do not parallel the facts in this case. (Def.'s Reply at 5.) Defendant argues that in *Fonseca*, the plaintiff had not consulted with physicians or accumulated medical records and diagnoses sufficient enough to have been placed on notice, whereas in this case Plaintiff had been assessed for his back pain at least eight times before 2000. (*Id.* at 6.) Therefore, Defendant asserts Plaintiff was placed on notice that he had a potential lawsuit prior to 1996. (*Id.*)

The Sixth Circuit Court of Appeals emphasized that the question in *Fonseca* was whether the plaintiff's pain in 1996 was an aggravation of pain he had felt for the preceding 27 years or a separate and distinct injury. 246 F.3d at 590. The Sixth Circuit held that the plaintiff's

9

deposition testimony was sufficient to show a genuine issue of fact. *Id.* at 591. In this case, similar to *Fonseca,* Plaintiff has unequivocally testified that the injury and pain in 1993 were different from the injury and pain in 2000, and his testimony is supported by the testimony and affidavits of Dr. Bethune, Dr. Ines, and Dr. Dwyer. (Pl.'s Resp., Ex. 2 at 166-69.)

For those reasons the Court finds that there is a genuine issue of material fact as to whether Plaintiff's back pain injury and pain in 2000 and 2001 is distinct and separate in nature from Plaintif's back injury and pain in 1993 and intermittently until 1999. Therefore, the Court will deny Defendant's Motion for Summary Judgment as to Count II.

### C.     Count III: Plaintiff's Loss of Hearing

Defendant claims that Plaintiff's hearing loss is barred by the three year statute of limitations. (Def.'s Mot. at 11.) Plaintiff concedes that this claim is barred by the statute of limitations and does not contest Defendant's Motion for Summary Judgment as to Count III. (Pl.'s Resp. at 3.) Therefore the Court will grant summary judgment as to Count III and dismiss that Count.

### D.     Count IV: Occupational Injuries to Plaintiff's Right Shoulder

The motion for summary judgment of Count IV concerns whether Plaintiff has shown the right shoulder injury sustained in 2001 was separate and distinct from the right shoulder injury in 1992.

Plaintiff testified that after he sustained an injury to his right shoulder in 1992, his shoulder was repaired and he was allowed to return to work. (Def.'s Mot., Ex. A at 73.)

Additionally, Dr. Frye's testimony supports the testimony of Plaintiff. Dr. Frye testified he performed an open rotator cuff surgery on Plaintiff in 1992, and Plaintiff returned to work six

months after the surgery.[4]  (Pl.'s Resp., Ex. 3 at 26.)  In Dr. Frye's opinion, Plaintiff's tear to his right shoulder rotator cuff in 1992 was not permanent if Plaintiff could get through the "healing phase undisturbed and nobody has disrupted the repair."  (*Id*. at 29.)  Dr. Frye noted he would consider Plaintiff's shoulder injury permanent only if Plaintiff continued to complain of pain.  (*Id*. at 28.)  Plaintiff was not treated by Dr. Frye for his right shoulder after January 4, 1993.  (*Id*.)  Dr. Frye testified Plaintiff's tear to his rotator cuff in 1992 was traumatic in nature and happened in a short period of time.  (*Id.* at 31-32, 36.)  This is in contrast to Plaintiff's partial articular supraspinatus tendon tear (PASTA) which was degenerative in nature and discovered in an arthrogram in October 2001.  (*Id*.)

Dr. James Kosiur also supported Plaintiff's testimony in his deposition.  Dr. Kosiur operated on Plaintiff's right hand for carpal tunnel syndrome in September 2001.  (Pl.'s Resp., Ex. 4 at 10-13.)  Dr. Kosiur took the arthrogram of Plaintiff's shoulder in October 2001, in which he discovered a small cyst in the end of the clavicle, degenerative joint disease in the acromioclavicular joint, and tenderness over his shoulder.  (*Id*. at 14.)

On behalf of Defendant, Dr. Frank R. Lovell, III performed an independent medical examination of the evidence on March 31, 2005, (Pl.'s Resp., Ex. 5 at 1), and reached a conclusion that corroborates Dr. Kosiur's and Dr. Frye's testimony.  After interviewing Plaintiff and reviewing the medical records, Dr. Lovell wrote, "I don't think it is necessarily appropriate to attribute the current right shoulder symptoms to the previous injury.  If he had a rotator cuff tear and fully rehabilitated it, his risk for further rotator cuff problems would be similar to the risk of having never injured it at all."  (*Id*. at 11.)  In his opinion, Plaintiff's 2001 injury was not linked to a specific event, but was consistent with chronic rotator cuff tendonitis.  (*Id*. at 12.)

---

[4] Dr. Lovell's summary of the facts places Plaintiff's shoulder surgery in 1989 after a traumatic event in 1988.  Dr. Frye and Plaintiff's testimony  place Plaintiff's shoulder surgery in 1992.  However, this evidence does not diminish Plaintiff's showing that there is a material issue of fact regarding the 1992 and 2001 shoulder injuries.

Upon review, the Court determines that the testimony and evidence present a genuine issue of material fact as to whether Plaintiff's 2001 shoulder injury was an aggravation or distinct from his 1992 injury.[5] Therefore, the Court will deny Defendant's motion for summary judgment as to Count IV.

### IV.     Conclusion

For the above reasons, the Court will grant Defendant summary judgment concerning Count III, and deny Defendant summary judgment as to Counts I, II and IV.

A Partial Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>August 19, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>UNITED STATES DISTRICT JUDGE |

---

[5] Having found a genuine issue of material fact as to whether Plaintiff's 1992 shoulder injury is distinct from Plaintiff's 2001 shoulder injury, the Court will not address the issue of the validity of the release signed by Plaintiff in 1992.